SAMUEL PALMER *vs.* STEPHEN MERRILL. JAMES DANA *vs* SAME.

An assignment, for a good consideration, from the assured in a life policy, by an indorsement in writing thereon, of part of the sum assured thereby, notice of which is given to the insurers, but the policy retained in the hands of the assignor, does not transfer to the assignee such an interest in the policy as will entitle him, if the estate of the assured proves insolvent, to recover the whole sum assigned to him of the assured's administrator, who has received the whole amount of the policy from the insurers.

THESE were actions of assumpsit against the defendant as the administrator of Asa Spaulding, late of Charlestown, deceased, and were tried before *Metcalf*, J., in this court.

The writ in the first-named case, which was dated the 26th of March, 1849, contained the common counts, accompanied by a specification of claim, set forth at length in a special declaration, which was afterwards filed in the cause. In the special declaration, the plaintiff alleged, that, on the 26th of May, 1847, the Massachusetts Hospital life insurance company caused the life of the defendant's intestate to be insured, for the term of seven years from that day, in the sum of $1,000, payable to the assured, his executors, administrators, or assigns; that the assured, on the 26th of May, 1848, by a memorandum in writing indorsed on the policy, for a valuable consideration, assigned and requested the insurers to pay the plaintiff the sum of $400, part of the sum insured by the policy, in case of loss on the same, of which assignment and request, the insurers on the same day had due notice ; that on the 5th of August, 1848, the assured died at Charlestown, and on the 9th due notice and proof thereof were given to the insurers; that the defendant was duly appointed administrator of the estate of the assured, and was notified of the assignment and request;

that on the 8th of November, 1848, the insurers paid the defendant the sum of $1,000, the amount insured on Spaulding's life; and that on the same day, the plaintiff demanded of the defendant the sum of $400 above mentioned; by means of which, the defendant became liable, and in consideration thereof promised the plaintiff to pay him the last-mentioned sum on demand; but though often requested, refused so to do.

At the trial, the plaintiff gave evidence of the facts alleged in his declaration, and, also, that at the time of the indorsement on the policy of the assignment or request above mentioned, the defendant's intestate was indebted to the plaintiff and one Harding, as partners, for the amount due on three promissory notes, being about the sum of $300; that on the said 26th of May, 1848, when the annual premium was paid, the assured exhibited the policy to the insurers, with the assignment or request above-mentioned indorsed thereon; that the plaintiff, soon after the death of the assured, demanded of the insurers to pay him the said sum of $400, which they declined doing, on the ground, that the assignment thereof was not in the form usually required by them, and that they did not consider themselves bound to pay the amount insured by the policy by instalments; and that the policy, with the assignment thereof indorsed, together with other effects of the assured, came into the hands of the defendant as administrator, immediately after his appointment as such.

The defendant pleaded in abatement, that the estate of his intestate had been represented insolvent before the date of the plaintiff's writ; to which plea the plaintiff demurred, and the defendant was ordered to answer over. The defendant then pleaded farther in abatement, that the action was commenced before the expiration of one year from the time of his taking out administration; which plea the defendant afterwards waived by agreement with the plaintiff.

At the trial, the defendant pleaded the general issue, and specified in his defence: 1st. That whatever money was paid to him by the insurers was paid to him as administrator, and that the same was lawfully retained by him as such, and belonged to the general assets of the estate of his intestate,

which had been duly rendered insolvent; and, 2d. That the defendant was not liable for interest.

It was admitted by the plaintiff, that the estate of the assured had been duly rendered insolvent.

The jury, under the instructions of the presiding judge, returned a verdict for the plaintiff for the amount due on the notes in evidence with interest.

In the second entitled cause, the writ bore date the same day; contained a similar declaration; the same facts were admitted and proved under it; and the same proceedings took place, as in the preceding case.

The verdicts, in both cases, were taken subject to the opinion of the whole court on the question, whether the several plaintiffs were entitled to judgment in the usual form, and to execution thereon, and to full satisfaction thereof, if the assets of the defendant's intestate were sufficient to satisfy the same; or, whether the judgments, when rendered, were to be presented to the commissioners in insolvency appointed to examine the claims against the estate, and to be allowed and paid like the claims of other creditors; and also upon the further question, whether the demand was in its nature assignable, and whether the plaintiffs' remedy was by the present form of action, or by a bill in equity.

*C. G. Loring*, for the plaintiffs.

1. These demands were assignable. The plaintiffs do not contend that the policy could be assigned in portions; but that an equitable interest in a portion might be assigned. These assignments of parts constituted a trust; the administrator alone must collect the whole, but, when collected, he holds the portions which have been assigned, in trust for the assignees. 2 Story, Eq. J. §§ 1040 *b*, 1044; Lewin on Trusts, 15, 76, 77; *Safford* v. *Rantoul*, 12 Pick. 233; *Wakefield* v. *Martin*, 3 Mass. 558; *Cutts* v. *Perkins*, 12 Mass. 206; *Parkhurst* v. *Dickerson*, 21 Pick. 307; *Adams* v. *Robinson*, 1 Pick. 461. The delivery was as perfect as the case admitted.

2. The plaintiffs can maintain assumpsit, and are not obliged to resort to a bill in equity. *Arms* v. *Ashley*, 4 Pick. 71; *Newhall* v. *Wheeler*, 7 Mass. 189, 198; *Hall* v. *Marston*, 17 Mass.

575; *Claflin* v. *Godfrey*, 21 Pick. 1, 6; *Swasey* v. *Little*, 7 Pick. 296; *Sheldon* v. *Purple*, 15 Pick. 528; *Andrews* v. *Sparhawk*, 13 Pick. 393.

3. The plaintiffs may recover judgment and execution in these actions, for the full amount of their claims and are not obliged to present their claims to the commissioners in insolvency.    See Rev. Sts. *c.* 69, §§ 6, 8; Lewin on Trusts, 205; *Johnson* v. *Ames*, 11 Pick. 173; *Safford* v. *Rantoul*, 12 Pick. 233; *Trecothick* v. *Austin*, 4 Mason, 16, 29, 30.

*G. W. Warren*, for the defendant.

SHAW, C. J.    This is a suit against the defendant as administrator of the estate of Asa Spaulding, in which the plaintiff seeks to recover the whole amount due to him on certain notes, due from said Asa Spaulding.    It is conceded that the estate of Spaulding has been represented insolvent; and, it is therefore quite clear, that the plaintiff cannot recover his full debt, to the injury of other creditors, unless there are circumstances which distinguish this case from the ordinary case of a claim on an insolvent estate.    The plaintiff undertakes thus to distinguish it, by showing that he had a lien on a specific portion of the assets, which came into the hands of the defendant charged with such lien; and that the defendant, having received the amount of it, is liable to the plaintiff as for money received to his use.

The ground is, that Asa Spaulding obtained a policy of insurance on his own life for $1,000; that, during his life, and whilst the policy was in force, he indorsed an order thereon, addressed to the insurers, requesting them, in case of loss, to pay $400 of the amount thereby insured to Palmer, the plaintiff; which order was duly signed by Spaulding and notified to the insurers, but the policy, with this indorsement thereon, remained in the custody of Spaulding until his decease, and came into the hands of the administrator, with the other effects of the deceased.    A like order, in all respects, and for the like sum, was also indorsed on the policy, in favor of James Dana. The claim of the plaintiff is, that this was an assignment *pro tanto*, of the policy, as collateral security for several notes, described in the report.    After the decease of Spaulding, and

notice to the insurers, the plaintiff demanded of them the $400, part of the loss, which the insurers declined paying, on the ground, that the assignment was not in the form usually required by them, and, besides, that they did not think themselves obligated to pay the amount of the policy in instalments. Subsequently, on the demand of the defendant, as administrator, the insurers paid the full amount to him.

The question is, whether the case shows an assignment, which vested any interest in this policy, legal or equitable, in the plaintiff. The policy was an executory contract, a chose in action, available as a legal contract only to Asa Spaulding and his personal representatives.

According to the modern decisions, courts of law recognize the assignment of a chose in action, so far as to vest an equitable interest in the assignee, and authorize him to bring an action in the name of the assignor, and recover a judgment for his own benefit. But, in order to constitute such an assignment, two things must concur: first, the party holding the chose in action must, by some significant act, express his intention that the assignee shall have the debt or right in question, and, according to the nature and circumstances of the case, deliver to the assignee, or to some person for his use, the security, if there be one, bond, deed, note, or written agreement, upon which the debt or chose in action arises; and, secondly, the transfer shall be of the whole and entire debt or obligation, in which the chose in action consists, and as far as practicable place the assignee in the condition of the assignor, so as to enable the assignee to recover the full debt due, and to give a good and valid discharge to the party liable.

The transfer of a chose in action bears an analogy, in some respect, to the transfer of personal property; there can be no actual manual tradition of a chose in action, as there must be of personal property, to constitute a lien; but there must be that which is similar, a delivery of the note, certificate, or other document, if there is any, which constitutes the chose in action, to the assignee, with full power to exercise every species of dominion over it, and a renunciation of any power over it, on

the part of the assignor. The intention is, as far as the nature of the case will admit, to substitute the assignee in place of the assignor as owner.

It appears to us, that the order indorsed on this policy, and retained by the assured, fails of amounting to an assignment, in both of these particulars. We do not question, that an assignment may be made of an entire fund, in the form of an order drawn by the owner on the holder of the fund, or party indebted, with authority to receive the property or discharge the debt. But if it be for a part only of the fund or debt, it is a draft or bill of exchange, which does not bind the drawee, or transfer any proprietary or equitable interest in the fund, until accepted by the drawee. It therefore creates no lien upon the fund. Upon this point, the authorities seem decisive. *Welch* v. *Mandeville,* 1 Wheat. 233; *S. C.* 5 Ib. 277; *Robbins* v. *Bacon,* 3 Greenl. 346; *Gibson* v. *Cooke,* 20 Pick. 15.

It seems to us quite clear, that the plaintiff acquired no such interest in this policy, as would enable him to maintain an action against the insurers. He seems himself to have thought so too; for although he demanded the amount of them, which they refused to pay, for reasons which seem to be conclusive; he yet declined bringing any suit against them, but permitted them to pay the money over to the administrator. If the plaintiff had no such legal or equitable interest in the debt due on the policy, as would enable him to maintain an action or suit in equity, either in his own name or in the name of the administrator of the assignor, for his own benefit, it seems difficult to perceive on what ground he had any equitable lien on the debt due by the policy; and if he had not, then the administrator took it as general assets, charged with no trust for the plaintiff.

It appears to us, that a contrary doctrine would tend to a great confusion of rights. A man cannot, by his own act, charge a personal chattel, a carriage and horses, for instance, with a lien in favor of a particular creditor, and yet retain the dominion and possession of them till his death; *à fortiori* where he retains the memorandum or instrument of transfer of such chattel in his own possession and under his own con-

trol. It seems to us equally impracticable, to charge a debt due to him, by an order or memorandum, retained in his own possession, purporting to give to a particular creditor an equitable lien, by the assignment of such chose in action, without a transfer or delivery of the security by which it is manifested. Such an assignment would not constitute the debtor himself a trustee to the creditors; what trust then devolves on the administrator? Were the law otherwise, an administrator, instead of succeeding to the property and rights of his intestate, to be administered and distributed equally amongst all the creditors, might be obliged to dispose of it in very unequal proportions, according to such supposed declaration of trust. These considerations apply with peculiar force to a policy of insurance on the life of the assured himself, on which no money can become due until the death of the assured, at which time all his rights devolve on his personal representative. If, therefore, it is intended to supersede the right of the personal representative, it must be done in the mode required for a complete assignment of the whole contract.

The defendant having waived his objection that this action was brought too soon, for the purpose of trying the plaintiff's right, we see no objection to entering a judgment for the amount of the debt actually due from the intestate, to be certified to the judge of probate, to be added to the commissioners' report of debts allowed, so as to enable the plaintiff to take a dividend *pro ratâ* with other creditors, but not to have execution *de bonis testatoris*.